**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
| ) | 8:07CR281 |
| Plaintiff,           ) | |
| ) | |
| vs.           ) | REPORT AND |
| ) | |
| CAROLYN M. GREEN,           ) | RECOMMENDATION |
| ) | |
| Defendant.           ) | |

This matter is before the court on the motion to suppress filed by defendant Carolyn Green (Green) (Filing No. 11). Green is charged in the Indictment with the possession of a firearm after having been convicted of a felony (Count I) in violation of 18 U.S.C. § 922(g) and a forfeiture count regarding the firearm (Count II) pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). Green seeks to suppress evidence obtained by the Omaha Police Department (OPD) on May 10, 2007, following a traffic stop of Green and her vehicle in Omaha, Nebraska.

An evidentiary hearing was held on Green's motion on October 10, 2007. Green was present for the hearing along with her appointed counsel, Assistant Federal Public Defender Jeffrey L. Thomas. The United States was represented by Assistant U.S. Attorney Frederick D. Franklin. During the hearing, the court heard the testimony of OPD Officers Darren Cunningham (Officer Cunningham). The court also received into evidence a photograph of a motor vehicle dashboard (Exhibit 1) and a copy of an NCJIS Vehicle Tile and Registration Detail (Exhibit 101). A transcript of the hearing (TR.) was filed on October 15, 2007 (Filing No. 20).

**FINDINGS OF FACT**

On May 10, 2007, Officer Cunningham was assigned to the C Shift (3:10 p.m. to 11:50 p.m.) in the Northeast Precinct (north of Dodge Street and east of 42nd Street) (TR. 4-5). Officer Cunningham was in uniform and driving a marked police cruiser (TR. 33). Around 8 p.m., Officer Cunningham was traveling west on Himebaugh Street and saw a white vehicle, a 1992 Oldsmobile, parked in the middle of the street about a hundred feet

away (TR. 5-7). He observed a female driver sitting in the driver's seat and a male standing outside the passenger door (TR. 6). It appeared the male was involved in a verbal altercation with at least two individuals standing outside the Oldsmobile (TR. 6). There appeared to be a lot of hand gestures, and it appeared to Officer Cunningham that a fight was about to erupt (TR. 6). As Officer Cunningham drove closer to the parked Oldsmobile, the male entered the passenger side of the Oldsmobile and the Oldsmobile drove off (TR. 8). As Officer Cunningham's cruiser approached the location, he observed six to eight persons standing around and an unidentified person yelling to Officer Cunningham: "There's a gun in the car! There's a gun in the car!" (TR. 9). Officer Cunningham followed the Oldsmobile west on Himebaugh Street, where it made a right turn north on 25th Street (TR. 11). At 25th Street, the Oldsmobile failed to stop for a stop sign (TR. 11). Officer Cunningham decided to perform a felony stop of the Oldsmobile, but called for backup due to the report of the firearm and the verbal altercation he observed earlier (TR. 11). Officer Cunningham activated his lights and stopped the Oldsmobile, but waited for the backup before approaching the stopped Oldsmobile (TR. 13). Meanwhile, Officer Cunningham ran the license plate through dispatch and found the Oldsmobile to be registered to Carolyn Green (TR. 20). OPD Officers Abramson and Gerrity, in uniform and in one marked cruiser, and OPD Officers Schuster and Simmons, in uniform and in another marked cruiser, responded to the scene of the stop (TR. 12).

Using verbal commands and at gunpoint, the officers ordered the occupants of the Oldsmobile to get out of the vehicle (TR. 28). The occupants, Green as the driver and Darrin Webb (Webb) as the passenger, did so separately in compliance with the officers' orders (TR. 29; 17). In turn, Green and Webb were instructed to put their hands in the air, step backwards towards the officers, and then lay on the ground where each was handcuffed (TR. 29-30). After Green and Webb were handcuffed, each was searched and seated separately in a police cruiser (TR. 31). No firearm was found on the person of Green or Webb (TR. 31). The officers searched the Oldsmobile and found no firearm (TR. 31). As the officers were getting biographical data from Green and Webb, Officer Cunningham received a call from police dispatch that an anonymous caller called in and stated there was a gun in the dash of the car of the vehicle the police just stopped (TR. 14;

31). The officers searched the dashboard of the Oldsmobile and seized a handgun hidden in the dashboard (Exhibit 1; TR. 16). Following the discovery of the handgun, both Green and Webb were transported to the Northeast Precinct OPD Station (TR. 18). There, Green was **Mirandized** and admitted to the possession of the handgun (TR. 18).

## LEGAL ANALYSIS

Green argues she was improperly detained at the traffic stop and her automobile was illegally searched. Green does not claim her post-arrest statement was illegally obtained apart from the fact such statement was the product of the illegal detention and seizure. As such, Green asserts the statement should be excluded under **Wong Sun v. United States**, 371 U.S. 471 (1963) (TR. 19).

Officer Cunningham saw the Oldsmobile fail to stop at a stop sign. "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." **United States v. $404,905.00 in U.S. Currency**, 182 F.3d 643, 646 (8th Cir. 1999) (**citing Pennsylvania v. Mimms**, 434 U.S. 106, 109 (1977)). Thus, Officer Cunningham was authorized to make the traffic stop.

The stop was in conjunction with the incidents which were observed by Officer Cunningham immediately prior to the stop, i.e., a verbal altercation in the street, the swift departure of the Oldsmobile as the police cruiser arrived, and shouts from the bystanders that there was a gun in the Oldsmobile. In combination with the traffic violation, police officers may make a valid investigatory stop of a vehicle based on reasonable suspicion that the occupants of the vehicle are engaged in criminal activity. **See Terry v. Ohio**, 392 U.S. 1, 25-31 (1968); **United States v. Sharpe**, 470 U.S. 675, 682 (1985); **United States v. Navarrete-Barron**, 192 F.3d 786, 790 (8th Cir. 1999). Furthermore, "[a]fter making a valid **Terry** stop, police officers must diligently work to confirm or dispel their suspicions in a short period of time." **United States v. Bell**, 183 F.3d 746, 749 (8th Cir. 1999). Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. **$404,905.00**, 182 F.3d at 647; **see also United States v. Sokolow**, 490 U.S. 1, 7 (1989). Furthermore, the

police officer may take further action as necessitated by the information gathered at the scene and by information provided by bystanders. *$404,905.00*, 182 F.3d at 647; *Allegree*, 175 F.3d at 650-51. The scope of an investigative detention is not exceeded when a suspect is handcuffed, when such action is a reasonable precaution. *Navarrete-Barron*, 192 F.3d at 791 (reasonable depending on the number of suspects present compared to the number of officers, the type of crime involved, and whether the officers suspect the suspect has a weapon).

Unlike the information found to be of insufficient reliability to justify a *Terry* stop and frisk in *Florida v. J.L.*, 529 U.S. 266 (2000) (anonymous caller who did not identify himself or explain how he obtained the information stated young black male in plaid shirt standing at a particular bus stop was carrying a gun), Officer Cunningham observed a fracas in the street and heard bystanders immediately stating there was a gun in the car gave a sufficient indicia of reliability warranting a *Terry* stop. The stop was conducted as a felony stop by the OPD officers. As such, officers were called as backup before approaching the vehicle and the passengers were ordered out of the vehicle at gunpoint and immobilized. "Armed persons are so dangerous to the peace of the community that the police should not be forbidden to follow up a tip that a person is armed, and as a realistic matter this will require a stop in all cases." *United States v. DeBerry*, 76 F.3d 884, 886 (7th Cir. 1996). Once stopped and detained for the traffic offense, the officers performed a quick search of the car for the gun. Finding none in plain sight, they were processing the occupants when an anonymous caller stated there was gun in the dash of the car the officers had stopped. Given the prior incidents, it was reasonable for the officers to return to the Oldsmobile and check in the dash for the gun both as an extension of the *Terry* investigation and for officer safety. **See** *United States v. Wheat*, 278 F.3d 722 (8th Cir. 2001) and cases cited *infra*.

The officers had probable cause to stop and search Green and her vehicle on May 10, 2007. Green's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Green's motion to suppress (Filing No. 11) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of November, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge